## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

CHARLES WEINACKER,          :

    Plaintiff,              :

vs.                      :            CA 22-00314-TFM-MU

WAHL CLIPPER CORP.,        :

    Defendant.           :

## REPORT AND RECOMMENDATION

This cause is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1) and S.D. Ala. GenLR 72(a)(2)(S), on Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 26) and supporting brief (Doc. 25), Plaintiff's objection (Doc. 28), and the movant's reply (Doc. 29).  Based on the contents of these pleadings and for the reasons set forth below, the Magistrate Judge **RECOMMENDS** that Defendant's motion be **GRANTED.**

## I. Jurisdiction and Venue

The action is properly before this Court as it is brought for violations of §§ 32(a) and 43(a) of the Lanham Act (federal jurisdiction); Plaintiff has established personal jurisdiction over Defendants by a showing of sufficient minimum contacts with the state; and, venue is proper under 28 U.S.C. § 1391 because a substantial part of the events, acts, or omissions given rise to this dispute took place in the Southern District of Alabama.

## II. Factual and Procedural Background

On August 12, 2022, Plaintiff filed an eight-count complaint against Wahl Clipper Corporation ("Wahl") arising out of Wahl's purported misappropriation and use of

Plaintiff's "PET FRIENDLY" mark. (Doc. 1). After Wahl filed a motion to dismiss outlining the elements of each claim and pointing out the deficiencies of Plaintiff's complaint, specifically the insufficiencies of each pled claim (*see* Doc. 8), Plaintiff filed an amended complaint (Doc. 22). The amended complaint asserts the same eight counts against Wahl and generally alleges that Plaintiff owns exclusive trademark rights to the "PET FRIENDLY" mark and that Defendant "has repeatedly infringed these rights by selling a variety of products bearing close imitations and counterfeits of the PET FRIENDLY Mark." (Doc. 22 at 1). The amended complaint bears an image (copied and inserted below) of an alleged infringing product:



(Doc. 22 ¶ 2). The side-by-side comparison of the parties' bottles shows Plaintiff's pet shampoo displaying the "PET FRIENDLY" mark as a brand name, with Wahl's pet shampoo containing the phrase "Pet Friendly Formula". This appears to be the basis of Plaintiff's claim against Defendant Wahl.

Wahl has moved to dismiss the amended complaint as a shotgun pleading and because each of Plaintiff's claims is insufficiently pleaded and/or meritless. (Doc. 26 at 2). Notably, Wahl's current motion is nearly identical to its first, as Plaintiff's amended

complaint pleads nearly identical claims and allegations, failing to cure any fatal defects, including failing to provide sufficient factual details for the claims asserted against Wahl. In addition to requesting dismissal of each of Plaintiff's claims, Wahl further requests attorneys' fees and costs, "as a result of Plaintiff's propensity for being vexatious and continuing to assert claims he knows are frivolous and completely lacking in legal or factual support." (*Id*. at 4) (citing Fed. R. Civ. P. Rule 11; 28 U.S.C. ¶ 1927).

### III. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a motion to dismiss an action on the ground that the allegations in the complaint fail to state a claim upon which relief can be granted. On such a motion, the "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Little v. City of N. Miami*, 805 F.2d 962, 965 (11th Cir. 1986) (per curiam) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (per curiam) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)). The court must draw "all reasonable inferences in the plaintiff's favor." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). However, the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The U.S. Supreme Court has suggested that courts adopt a "two-pronged approach" when considering motions to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual

allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).  Importantly, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* (quoting *Iqbal*, 556 U.S. at 682, 129 S. Ct. at 1951-52).

Rule 12(b)(6) is read in consideration of Federal Rule of Civil Procedure 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to 'give the defendant fair notice of what the . . .claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal quotation omitted).  Although Rule 8 does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  To survive a motion to dismiss, a complaint must state on its face a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Unless the plaintiffs have "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S at 678 (quoting *Twombly*, 550 U.S at 556).

## IV. Discussion

### A. Pleading

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint "must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(a)(2)'s purpose is to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted). "[T]his rule aims to enable the responding party to identify the pleader's claim, frame a responsive pleading, and to permit the court to determine which facts are intended to support which claims." *Pouyeh v. Pub. Health Tr. of Jackson Health Sys.*, 832 F. App'x 616, 622–23 (11th Cir. 2020) (per curiam).

Rule 10(b) further provides that "[a] party must state its claims ... in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). "If doing so would promote clarity, each claim founded on a separate transaction or occurrence ... must be stated in a separate count ...." *Id.*

"Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). The Eleventh Circuit has roughly identified four broad categories of shotgun pleadings: (1) those in which "each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint;" (2) those that do not re-allege all preceding counts but are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action;" (3) those

that do not separate each cause of action or claim for relief into a different count; and (4) those that assert "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *See id*. at 1321-23. Although there are different types of shotgun pleadings, their "unifying characteristic ... is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id*. at 1323.

Wahl contends Plaintiff's amended complaint is a shotgun pleading that warrants dismissal. The Court disagrees. Plaintiff has complied with Rule 10(b) and, though replete with conclusory allegations, the pleading provides Wahl sufficient notice of the claims asserted against it.

To otherwise determine the sufficiency of the claims asserted in Plaintiff's amended complaint, the Court will take three steps: (1) note the elements necessary to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, the Court will assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). While courts in the Eleventh Circuit generally afford the pleadings of *pro se* litigants liberal construction, those pleadings must nonetheless conform to procedural rules, *Albra v. Advan, Inc.,* 490 F.3d 826, 829 (11th Cir. 2007), and courts may not act as *de facto* counsel for a *pro se* plaintiff and rewrite a deficient pleading. *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other*

*grounds as recognized in Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010) ("[E]ven in the case of *pro se* litigants this leniency does not give a court license to serve as *de facto* counsel for a party. . . or to rewrite an otherwise deficient pleading in order to sustain an action.").

The Court turns to the eight counts alleged in Plaintiff's amended complaint.

**B.  Claim 1 - Federal Trademark Infringement**

In Claim 1, Plaintiff alleges trademark infringement against Wahl pursuant to 15 U.S.C. §§ 1114 and 1125(a) for using "the PET FRIENDLY Mark, and confusingly similar variations thereof, in commerce to advertise, promote, market, and sell pet products in the pet industry throughout the United States including Alabama." (Doc. 22 at 4).

By its express provisions, 15 U.S.C. § 1114 only applies to "registered" marks. *See* 15 U.S.C. § 1114(1)(a) & (b) ("Any person who shall, without the consent of the registrant—(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a ***registered mark*** in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or (b) reproduce, counterfeit, copy, or colorably imitate a ***registered mark*** and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising or goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the ***registrant*** for the remedies hereinafter provided.")

(emphasis supplied).  Plaintiff has not shown or alleged a single active registered

trademark in any pleading before this Court.  As Wahl points out, and an examination

of the United States Patent and Trademark Office (USPTO) records reveals, Plaintiff's

registrations for the PET FRIENDLY mark were cancelled years before this action was

filed.[1]  (*See* Docs. 26 at 10; 25-1). While Plaintiff appears to acknowledge this, he

posits that the registration of a mark at any point in time qualifies the mark as being

"registered" under the Lanham Act, 15 U.S.C. § 1114.  (Doc. 28 at 9).  Plaintiff does not

cite any legal support for his interpretation of the statute, and the Court finds none.

Instead, the law is clear, "[a] court has no jurisdiction over a claim under 15 U.S.C. §

1114(1) for infringement of a registered mark if the registration has lapsed by the time

the suit was filed." 6 McCarthy on Trademarks and Unfair Competition § 32:3 (5th ed.).

"Therefore, the owner of a mark that was valid when issued but which has since lapsed

has no cause of action under § 1114—not even for infringement that occurred during

the lifetime of the mark." *ZipSleeve, LLC v. West Marine, Inc.*, No. 3:14–cv–01754–SI,

2015 WL 2380990, at *3 (D. Or. May 18, 2015).  Accordingly, because Plaintiff has no

registered marks, he cannot maintain an action for trademark infringement under 15

U.S.C. § 1114.  To the extent Claim 1 of the amended complaint relies on § 1114, it

should be **dismissed**.

---

[1]     The Court takes judicial notice of the registrations submitted by Defendant on this motion to dismiss, without converting the motion to one for summary judgment.  *Sream, Inc. v. PB Grocery, Inc., of Palm Beach*, No. 16-CV-81584, 2017 WL 6409006, at *3 (S.D. Fla. Mar. 1, 2017) ("Accordingly, the Court may consider the USPTO registrations, which are matters of public record, maintained by the government, and relied on by Sream as the basis of its allegations, in considering a motion to dismiss.").

To the extent Plaintiff relies on § 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125(a), he must show that he holds a qualifying unregistered trademark by demonstrating he "made the first use of the mark to identify his goods or service and continues to use the mark commercially," *ITC Ltd. V. Punchgini, Inc.*, 482 F.3d 135, 157 (2d Cir. 2007), that the mark is entitled to protection and that the defendant's use of a similar mark is likely to cause confusion among consumers. *Malletier v. Dooney & Bourke, Inc.,* 454 F.3d 108, 115 (2d Cir.2006). This claim will be discussed as part of Plaintiff's Claim 2 as the claims share the same essential elements. *Cf., Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C.*, 931 F.2d 1519, 1521 (11th Cir. 1991) (explaining analysis for common law trademark infringement claims is the same as the analysis for the claims under federal law).

### C. Claim 2 - Common Law Trademark Infringement, 15 U.S.C. § 1125(a)

To make a claim of trademark infringement, Plaintiff must show "(1) that [he] had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.,* 106 F.3d 355, 358 (11th Cir. 1997). "With respect to ownership of an unregistered mark, the first party to adopt a mark can assert ownership so long as it continuously uses the mark in commerce." *Com. Nat'l Ins. Servs., Inc. v. Com. Ins. Agency, Inc.*, 214 F.3d 432, 438 (3d Cir. 2000) (citation omitted). Plaintiff alleges ownership of the PET FRIENDLY mark, claiming he created the mark, was the first to use the mark, and that he has continuously used the mark in interstate commerce since 1994. (Doc. 22 at 3-5; Doc. 28 at 10). Although Wahl contests Plaintiff's continuous

usage (see Docs. 25-4; 26 at 2, n.2), at this stage of the case, the undersigned finds Plaintiff's allegations sufficient to satisfy the first element of his claim.

Next, Plaintiff, must show that his unregistered mark is protectable by demonstrating that his mark "is inherently distinctive *or . . .* has acquired distinctiveness through secondary meaning." *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 769 (1992). "[O]nly those marks that are capable of distinguishing the owner's goods from those of others, i.e., that are sufficiently "distinctive," are eligible for federal registration or protection as common law marks under the Lanham Act." *Tana v. Dantanna's,* 611 F.3d 767, 773 (11th Cir. 2010). The distinctiveness of a mark is often classified as: (1) generic, (2) descriptive, (3) suggestive, (4) fanciful, or (5) arbitrary. *See Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9 (2d Cir. 1976) (citation omitted). "The latter three categories are inherently distinctive, whereas generic marks cannot be distinctive and descriptive marks are distinctive only if they have acquired 'secondary meaning.'" *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.,* 851 F.3d 440, 451 (5th Cir. 2017) (internal quotation and citation omitted). Here, beyond Plaintiff's allegation that he was "the first to create the brand by combining the words PET and FRIENDLY" (Doc. 22 at 3), he provides no facts or allegations adequately describing the purported distinctiveness of his mark. Nor does he articulate facts suggesting that his mark has acquired a secondary meaning.[2] This failure informs the inadequacy of Plaintiff's

---

[2]     In its motion, Wahl asks the Court to consider the USPTO's most recent trademark registration denial of Plaintiff's PET FRIENDLY mark as a "highly descriptive", "widely-used", "commonplace term" which "merely describes a characteristic of applicant's goods" as verification that Plaintiff's mark is not protectable. (Doc. 25-3). Notably, however, this denial is associated with Plaintiff's application for registering the PET FRIENDLY mark with clothing items, not with the pet products for

attempt to plead the second element because the type of mark is relevant to this inquiry. *See, e.g., We Care Heating & Air, LLC v. WeCare Pools, LLC,* 2:19-cv-01911-CLM, 2021 WL 4477671, *4* (N.D. Ala. Sept. 30, 2021) ("The type of mark, also called the strength or distinctiveness of the mark, is one of the most important likelihood of confusion factors.") (citation omitted).  However, reading the facts in a light most favorable to Plaintiff, the Court takes notice of Plaintiff's averment in his original complaint that he previously "filed registration for PET FRIENDLY in eight (8) classes". (Doc. 1 at 2-3).  This allegation gives rise to the fact that the mark is eligible for protection.

Plaintiff's claim, however, is fatally defective on the third element. Plaintiff must show that Wahl's use of the mark is likely to cause confusion.  *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc*., 783 F.3d 527, 536 (11th Cir. 2015).  "[L]ikelihood of confusion occurs when a later user uses a trade-name in a manner which is likely to cause confusion among ordinarily prudent purchasers or prospective purchasers as to the source of the product." *Wreal, LLC v. Amazon.com, Inc.,* 38 F.4th 114, 126 (11th Cir. 2022) (quotation marks and citation omitted).  In the Eleventh Circuit, seven factors are considered when determining the likelihood of confusion between two marks: "(1) type of mark; (2) similarity of mark; (3) similarity of the products the marks represent; (4) similarity of the parties' retail outlets and customers; (5) similarity of advertising media; (6) defendant's intent; and (7) actual confusion." *Aronowitz v. Health-Chem Corp.,* 513 F.3d 1229, 1239 (11th Cir. 2008).  The only factual allegation offered by Plaintiff

---

which Plaintiff alleges he has sold under the PET FRIENDLY mark since 1994 and is, thus, not definitive on the issue currently before the court.

appears to be a picture purportedly comparing the parties' pet shampoos and marks. (*See* Doc. 22 ¶ 2).  While both products contain the words "Pet Friendly," the similarities end there.  The mark or complained of words are utilized in different contexts, different fonts, different sizes, and different descriptive forms.  One is clearly indicating a brand name and the other a descriptive phrase of the product's ingredients – which are "pH balanced, Paraben & Alcohol Free" – thus, a pet friendly formula. (*Id.*).  There is no reasonable suggestion that Wahl's usage of the words "Pet Friendly" implies a connection to Plaintiff's PET FRIENDLY goods, products, services or trademark. Rather, the phrase serves to describe generic characteristics of the product.

Defendant Wahl expounds on this usage of the phrase with the USPTO records attached to its brief in support of dismissal.  (*See* Doc. 25-3).  The Court takes judicial notice of these USPTO records,[3] to the extent that they demonstrate abundant, fair use of the phrase "pet friendly" across a broad spectrum of companies/distributors and products, including pet friendly clothes, bedding, home interiors, hotels, gardening products, blankets, and rugs. (Doc. 25-3 at 24-60).  Accordingly, though the parties appear to produce and sell similar products (pet shampoo), the PET FRIENDLY mark is not utilized, here, in a manner that is likely cause confusion. Rather, the usage reflects the common usage of the phrase as it is utilized in everyday speech when referencing affection for one's pets or products and services that are safe and suitable options for pets and pet owners.

---

[3]    Over Plaintiff's objection, this Court determined that taking judicial notice of Defendant's submissions was appropriate pursuant to Rule 201 of the *Federal Rules of Evidence*. (Docs. 32, 35, 40).  Notably, the Court is not considering the USPTO record for the purpose of determining the validity of Plaintiff's claimed trademark, but rather for the sole purpose of demonstrating the common usage of the phrase in everyday speech.

Beyond this, Plaintiff's amended complaint lacks facts showing the other needed elements effective in determining the likelihood of confusion.  Plaintiff provides no facts as to the similarity of where and to whom the conflicting pet product is sold.  Nor does Plaintiff articulate any similarities in advertising to cause confusion.  The pleadings also lack any actual confusion being caused by Wahl's usage of the descriptive phrase.  Indeed, Plaintiff's complaint is devoid of any factual allegations which reasonably suggest a likelihood of confusion – the main element of a trademark infringement claim.  Accordingly, Plaintiff fails to allege a facially plausible common law trademark infringement claim.

While cognizant of the liberal pleading standard for *pro se* plaintiffs, the Court notes that Plaintiff here is a sophisticated (and arguably experienced) *pro se* plaintiff.  Furthermore, this is Plaintiff's second attempt to plead his case against Wahl before this Court, and he is so doing after being advised of the elements and factual allegations needed for each claim.  Plaintiff is still unable to allege sufficiently a trademark infringement claim (the foundation and basis of the other asserted claims), and thus Plaintiff's claim is due to be **dismissed**.

### D.  <u>Claim 3 - Trademark Dilution</u>

"In order to make out a claim for dilution, a plaintiff must show: (1) it owns a famous mark that is distinctive; (2) the defendant is using its famous mark in commerce that allegedly dilutes the plaintiff's famous mark; (3) the defendant's use of its mark began after the plaintiff's mark became famous; and (4) the defendant's use of its mark is likely to cause dilution by blurring or by tarnishment." *Herman Miller, Inc. v. Belnick, LLC,* 510 F.Supp.3d 1342, 1347 (N.D. Ga. 2021) (citations omitted).

In determining whether a Plaintiff has properly alleged that his mark is famous among the general consuming public, courts consider: "'(i) [t]he duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties[;] (ii) [t]he amount, volume, and geographic extent of sales of goods or services offered under the mark[;] (iii) [t]he extent of actual recognition of the mark[;] [and] (iv) [w]hether the mark was registered . . . .'" *Id.,* quoting 15 U.S.C. § 1125(c)(2)(A)(i)-(iv).  In this case, Plaintiff has not appropriately alleged that his mark is famous.  Plaintiff's general averment that he has advertised and promoted the PET FRIENDLY mark in the United States and globally ("via the Internet, television, public appearances and print as well as unsolicited media coverage (i.e. Weather Channel®)" (Doc. 28 at 12; *see also* Doc. 22 at 4-5) lacks any allegations related to the type of advertising and publicity surrounding his mark (including the duration, extent, and geographic reach of that advertising and publicity), the amount, volume, and geographic extent of sales of goods and services offered under those marks, or the extent of recognition of the marks.  Accordingly, this claim should be **dismissed**.

### E.  Claim 4 - Contributory/Viciously Trademark Infringement

"Liability under the Lanham Act may be imposed not just on direct infringers, but also on those who induce or facilitate the infringing conduct of others." *Coach, Inc. v. Swap Shop, Inc.,* 916 F.Supp.2d 1271, 1278 (S.D. Fla. 2012), citing *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844, 853-55 (1982). "A claim for contributory trademark infringement [] has two elements: (1) a person or entity commits direct trademark infringement under the Lanham Act; and (2) the defendant (a)

'intentionally induces' the direct infringer to commit infringement, (b) supplies a 'product' to the direct infringer whom it 'knows' is directly infringing (actual knowledge), or (c) supplies a 'product' to the direct infringer whom it 'has reason to know' is directly infringing (constructive knowledge)." *Luxottica Group, S.p.A. v. Airport Mini Mall, LLC,* 932 F.3d 1303, 1312 (11th Cir. 2019), citing *Inwood Laboratories, Inc.,* 456 U.S. at 854. So, for contributory trademark infringement to be a viable claim, the Defendant must intentionally induce the direct infringer to commit infringement, or the acts of "contribution" must come after acquiring actual knowledge (or constructive knowledge). Plaintiff has failed to satisfy either element.

Plaintiff has yet to provide sufficient facts stating a claim of trademark infringement against Wahl to satisfy the first element of this claim. Plaintiff also fails to satisfy the second element to show contributory infringement, in that the facts pled are insufficient and the claims appear to conflate the alleged infringing acts with any contributory acts. For instance, Plaintiff alleges Wahl "has actual knowledge of the Counterfeiting Websites' [including "Amazon, Target, Paw Roll, Walmart, eBay, Meijer, Wahl.com, and so forth" (Doc. 28 at 12-13)] illegal activities from, among other things, written notification." (Doc. 22 at 6). He further claims:

> 44) Defendant has materially encouraged, enabled, and contributed to the infringing conduct at the Counterfeiting Websites by providing, displaying offers for counterfeit products, facilitating communications by and between the sellers of counterfeit goods over the Counterfeiting Websites and their distributors, consumers and vendors.
>
> 45) The illegal sales of products that infringe on the Plaintiff's Mark have generated enormous sums of monies for the Counterfeiting Websites, retailers and Defendant.
>
> 46) Despite the Defendant's duty and right to control the Counterfeiting Websites and retailers, they have taken no steps to stop or otherwise

prevent the ongoing counterfeiting operated by those entities or to disconnect links.

47) Defendant is therefore contributory and vicariously liable for the damages caused to Plaintiff as a result of the illegal promotion, advertisement, offer for sale and/or sale of counterfeit merchandise at the Counterfeiting Websites and retailers in violation of 15 U.S.C. § 1051, et seq. and Alabama common law.

(*Id*. at 6-7). These allegations are decidedly unclear as to what constitutes Wahl's contribution to infringement. None of the "counterfeiting websites" referred to by Plaintiff are proper defendants in this case, nor does Plaintiff describe what knowledge any website had to support this claim. In total, Plaintiff's rambling and conclusory allegations are impossible to decipher and simply insufficient to state a claim for contributory trademark infringement against Wahl and this claim should be **dismissed**.

## F. <u>Claim 5 - Reputational Damage</u>

Plaintiff avers he has expended substantial resources to build a strong brand around his PET FRIENDLY Mark and Wahl is marketing and selling its products to create customer confusion between PET FRIENDLY and Wahl's brands. (Doc. 22 at 7-8). Specifically, Plaintiff claims Wahl's usage of his mark would lead "a reasonable observer" to "conclude that Wahl uses PET FRIENDLY's formula in their shampoo." (Doc. 28 at 13). He further alleges Wahl is trading on the reputation of his brand and is denying him the ability to control consumer perception of products and services offered under the PET FRIENDLY mark. (Doc. 22 at 7-8).

Plaintiff has failed to state a cause of action for reputational damage. To start, Plaintiff does not articulate the statute under which he seeks relief, though the claim appears to be brought pursuant to the Lanham Act, as are the other claims in the

complaint.  If so, any § 1125(c) violation would require Plaintiff to establish ownership of

a distinctive, famous mark, which as previously discussed, see section D, Plaintiff has

not done.  Beyond this, Plaintiff has not demonstrated a cause of action for reputational

damage.  Instead, reputational damage may support a measure of damages, but the

claim itself must be predicated upon a separate legal theory of recovery (e.g., violation

of the Lanham Act) properly proven.  *See Hard Candy, LLC v. Anastasia Beverly Hills,

Inc.,* 921 F.3d 1343, 1353 (11th Cir. 2019) (recognizing reputational damage and loss of

good will as recoverable actual business damages available to a Lanham Act plaintiff).

Therefore, there exists no basis for Plaintiff to pursue a nonexistent "claim" for

reputational damage.  Accordingly, this claim should be **dismissed**.

### G. Claim 6 - Copyright Infringement

Plaintiff claims he possesses exclusive rights under the Copyright Act of 1976, 17

U.S.C. § 101 *eq. seq*., to the PET FRIENDLY copyright, alleging, in pertinent part that:

> Defendant has misappropriated, copied, distributed, created derivative
> works of, emulated, and publicly displayed the PET FRIENDLY
> Copyrights, and made commercial use of, material that infringes the PET
> FRIENDLY Copyrights.

(Doc. 22 at 8).

To prevail on a copyright infringement claim, Plaintiff bears the burden of

showing (1) ownership of a valid copyright and (2) copying of constituent elements of

the work that are original.  *Feist Publications, Inc. v. Rural Telephone Service Co., Inc*.,

499 U.S. 340, 361 (1991).  While Plaintiff is correct that an author gains "exclusive

rights" in his work immediately upon the work's creation, *see* § 106, "[b]efore pursuing

an infringement claim in court, however, a copyright claimant generally must comply

with § 411(a)'s requirement that "registration of the copyright claim has been made." §

411(a). *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887 (2019). "Therefore, although an owner's rights exist apart from registration, *see* § 408(a), registration is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights." *Id.*  It is only after Plaintiff has established these two elements that the burden then shifts to Defendants "to demonstrate the work in which copyright is claimed is unprotectable (for lack of originality) or, more specifically, to prove that . . . the copyrighted work actually taken is unworthy of copyright protection." *Montgomery v. Noga*, 168 F.3d 1282, 1289 (11th Cir. 1999) (internal quotation marks omitted).

Here, Plaintiff has failed to allege either element sufficiently.  Plaintiff's pleadings are void of any production or allegation of a copyright certificate, registration number, date of registration, or title submitted to be registered. *See* 17 U.S.C. § 411(a) ("[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."). Furthermore, Plaintiff fails to identify adequately the copyrighted material at issue – namely, a description of the material, artwork, and/or creative work allegedly authored.  Stated another way, Plaintiff has failed to identify what creative work was copyrighted and infringed upon.

Reading the pleadings in a light most favorable to Plaintiff, the undersigned notes that Plaintiff does allege that he was the first to put the words "PET" and "FRIENDLY" together, creating PET FRIENDLY. (S*ee* Doc. 28 at 4).  To the extent that this is the copyrighted work allegedly infringed upon, words and short phrases such as names,

titles, and slogans (as well as typeface as typeface) are examples of work **not subject** to copyright. *See* 20 C.F.R. § 202.1(a) & (e).

Accordingly, without the identification of a registered creative and published work, of which Plaintiff can give a complete description, the undersigned recommends that Plaintiff's Claim 6 be **dismissed**.

## H. <u>Claim 7 - False Designation and Unfair Competition</u>

Plaintiff alleges, pursuant to § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), that Wahl is using a similar imitation of PET FRIENDLY's mark, without permission, which is likely to cause confusion among consumers that Wahl's goods originate from PET FRIENDLY. (Doc. 22 at 8-9). Plaintiff further alleges Wahl's use of the PET FRIENDLY trademark has caused and "will continue to cause a likelihood of confusion and deception of members of the trade and public, and additionally, injury to PET FRIENDLY's goodwill and reputation as symbolized by the PET FRIENDLY Mark." *Id*. at 9.

"The law of unfair competition has its roots in the common-law tort of deceit: its general concern is with protecting *consumers* from confusion as to source." *Bonito Boats v. Thunder Craft Boats,* 489 U.S. 141, 157 (1989) (emphasis in original). To prevail on a federal claim of unfair competition or false designation of origin requires essentially the same elements as demonstrating trademark infringement: a trademark owner "must show (1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1346 (11th Cir. 2012) (citation omitted); *see*

*Custom Mtg. & Eng'g. Inc. v. Midway Servs., Inc*., 508 F.3d 641, 647-48 (11th Cir. 2007) (explaining the same elements for false designation).  At this time, Plaintiff has failed to plead sufficient facts as to a trademark infringement claim to survive this motion to dismiss (discussed, *supra*, at sections B. and C.).  Thus, the undersigned finds this cause of action should be **dismissed**.

## I.   Claim 8 - Unjust Enrichment

To plead an adequate cause of action for Unjust Enrichment, Plaintiff "must allege: (1) benefits conferred on defendant by plaintiff, (2) appreciation of such benefits by defendant, and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co*., 945 F.3d 1150, 1157, 1161–62 (11th Cir. 2019) (affirming dismissal of unjust enrichment claim because plaintiffs failed to allege that they had conferred a benefit upon defendants). Plaintiff has failed to provide facts to support the elements of a cause of action for unjust enrichment, as Plaintiff has not claimed that he conferred a benefit on Wahl.  Instead, Plaintiff's allegations are merely a continuation of his trademark infringement claim and a request for damages.

To this extent, § 1117(a) of the Lanham Act, at § 1117(a) allows a successful plaintiff to recover the defendant's profits where: (1) the defendant's conduct was willful and deliberate, (2) the defendant was unjustly enriched, or (3) it is necessary to deter future conduct. *See Howard Johnson Co., Inc. v. Khimani,* 892 F.2d 1512, 1521 (11th Cir. 1990).  As to the possibility of recovering damages due to unjust enrichment, Plaintiff has not only failed to provide specific facts to support the elements of willful and

deliberate conduct and/or unjust enrichment beyond his conclusory allegations and assumptions, but he has not overcome his initial burden of establishing a trademark infringement claim.

For these reasons, any attempt by Plaintiff to assert a cause of action for unjust enrichment should be **dismissed**.

## CONCLUSION

Based upon the foregoing, it is **RECOMMENDED** that the Defendant's motion to dismiss Plaintiff's second amended complaint be **GRANTED,** and this action be **DISMISSED**.

It is further **RECOMMENDED** that Defendant Wahl's request that their costs and attorneys' fees be taxed against Plaintiff be **DENIED**.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D.ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if

necessary in the interests of justice." 11th Cir. R. 3-1. To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 28th day of April, 2023.

s/P. Bradley Murray
**UNITED STATES MAGISTRATE JUDGE**